**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: February 04 2010

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 09-30996 |
| | ) | |
| Albert L. Mackey, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3109 |
| | ) | |
| Stephen Sapp, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Albert Mackey, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS**

This adversary proceeding is before the court on Defendant's motion to dismiss [Doc. # 11] and Plaintiff's opposition [Doc. # 19]. Defendant is the debtor in the underlying Chapter 7 bankruptcy case. In his complaint, Plaintiff seeks an order excepting from discharge certain debts allegedly owed to him by Defendant and determining the validity of a mortgage. Defendant moves to dismiss on the grounds that: (1) Plaintiff released all claims against Defendant pursuant to an agreement entered into by the parties in settlement of a state court civil action; (2) Plaintiff lacks standing to assert causes of action two and three in a direct action; and (3) the fourth cause of action is not a claim under 11 U.S.C § 523 and, therefore,

should be dismissed. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

In his complaint, Plaintiff alleges four causes of action. In his first cause of action, Plaintiff alleges that he and Defendant were shareholders in Air-Ride, Inc., and, as such, owed a fiduciary duty to each other. He alleges that Defendant breached this duty and owes him a debt for fraud and defalcation while acting in a fiduciary capacity and for a willful and malicious injury as determined by a jury in an action brought in state court. Plaintiff further alleges that, after obtaining a jury verdict in his favor of over three million dollars, the parties entered into a settlement agreement ("Settlement Agreement"), and that "[t]he purpose of the Settlement Agreement was to resolve the matters set forth in the jury verdict and avoid an appeal." [Doc. #1, Complaint, ¶ 12-13]. The parties to the Settlement Agreement are Plaintiff, Defendant and Air-Ride, Inc. Plaintiff alleges that Defendant owes him the amount that remains unpaid under the Settlement Agreement. The Settlement Agreement, dated November 22, 2006, and which is attached to the complaint, provides that Air-Ride and Defendant "have reached an agreement with [Plaintiff] to settle the claims which [Plaintiff] has asserted, or could assert, in the Civil Action [in state court] and other matters pertaining to Air-Ride and Fortress." [*Id.*, Ex. B, p. 1]. On the same date, pursuant to the Settlement Agreement, [*see id.* at ¶ 7], Plaintiff executed a document releasing Defendant from all claims and obligations that Plaintiff "ever had or may now have" against Defendant "based upon, arising out of, or related, directly or indirectly, to" any claims that were or could have been asserted in the state court action or that arise out of Plaintiff's ownership of stock in Air-Ride or Fortress Properties, Inc., ("Fortress") [Doc. # 11, attached "Release"].[1] Thereafter, an order was entered in the state court action that the judgment entered therein "be marked as 'satisfied' pursuant to the Settlement Agreement." [*Id.*, attached "Order of Dismissal and Satisfaction of Judgment"].[2]

---

[1] Federal Rule of Civil Procedure 10(c) allows the incorporation of exhibits or writings attached to a pleading and makes them "a part of the pleading for all purposes." Although the Release is not attached as an exhibit to the complaint, the Settlement Agreement, which is attached to the complaint, refers to such release as an obligation of Plaintiff under the Settlement Agreement. Where the plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *Weiner v. Kleis & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Weiner*, 108 F.3d at 89.

[2] The Order of Dismissal and Satisfaction of Judgment also is not attached to the complaint but, rather, is submitted as an exhibit to Defendant's motion to dismiss. However, because Plaintiff refers to the state court action and attached an incomplete copy of a Judgment Entry in that action, [*see* Complaint, Ex. A], and because the Settlement Agreement refers to the parties' obligation to file a dismissal entry in the state court action, [*see id.*, Ex. B, ¶ 8], the court will consider the Order of Dismissal and Satisfaction of Judgment as part of the pleadings for purposes of Defendant's motion to dismiss. *See* n. 1.

2

In his second cause of action, Plaintiff alleges that he "is and has been" the owner of fifty percent of the shares of common stock in Fortress, that Defendant owned the remaining fifty percent and that, as such, Defendant owed him a fiduciary duty. [Doc. # 1, Complaint, ¶ 18]. He alleges that an Option Agreement entered into between the parties in accordance with the Settlement Agreement gave Defendant an option to purchase all of Plaintiff's shares of common stock in Fortress. [*Id*. at ¶ 17, Ex. C]. During the term of the Option Agreement, Defendant had the power to vote all of the shares of Fortress "as he may deem appropriate, in his sole discretion," subject to certain restrictions, including a limitation on his power to vote the shares "to issue cash to himself from any mortgage or lien on property of Fortress" and a limitation on his power to obtain a mortgage on Fortress property. [*Id.,* Ex. C, ¶ 3]. Plaintiff alleges that, "without regard to his obligations under the Settlement Agreement or the Option Agreement, Defendant sold real property belonging to Fortress and converted the funds he obtained for his own purposes and use." [Complaint, ¶ 22]. He alleges that Defendant failed to notify Plaintiff of his intention to sell the Fortress real property and did not account to Plaintiff for the proceeds of the sale. [*Id.* at 23]. Plaintiff further alleges that the sale "constituted fraud or defalcation while acting in a fiduciary capacity, and/or embezzlement and/or larceny," and a willful and malicious injury, a debt for which is owed to Plaintiff in the amount of his share of the proceeds from the sale of the real property. [*Id.* at ¶¶ 25-27].

In his third cause of action, Plaintiff alleges that claims against Fortress include a note signed by Defendant on behalf of Fortress that exceeds the mortgage amount permitted under the Settlement Agreement and that Defendant "should be denied a discharge of the debt owed to [Plaintiff] because of his continual ongoing breaches of fiduciary duty and wrongful activities some of which were coupled with misrepresentation and fraud." [*Id.* at ¶ 29-30].

Finally, in his fourth cause of action, Plaintiff seeks a declaratory judgment that a mortgage on Defendant's residence that was granted to him by Defendant to assure payment under the Settlement Agreement is valid and enforceable, notwithstanding Defendant's attempt to obtain a release of the mortgage. [*Id.* at ¶¶ 32-34].

## LAW AND ANALYSIS

Defendant brings his motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which applies to adversary proceedings in bankruptcy through Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2), which applies to adversary proceedings in bankruptcy through Federal Rule of Bankruptcy Procedure 7008, provides that a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

3

The United States Supreme Court clarified in two recent cases the pleading standards of Rule 8 and the standards by which a complaint is measured under that rule in deciding a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). These cases apply a more rigorous test for complaints than that previously applied, as can be seen in the bankruptcy context alone from the growing number of published and unpublished decisions dismissing § 523(a)(2), (4) or (6) dischargeability claims. *See, e.g., Puzzo v. Martin (In re Martin)*, 419 B.R. 524 (Bankr. D.N.H. 2009)*; Centier Bank v. Young (In re Young)*, Case No. 08-24099 JPK, 2010 Bankr. LEXIS 126 (Bankr. N.D. Ind. Jan. 21, 2010). To defeat a motion to dismiss under 12(b)(6), a complaint must now set forth a "plausible entitlement to relief." *Twombly*, 550 U.S. at 559. Conceivable claims are no longer sufficient. *Id.* at 570 (complaints should be dismissed where "plaintiffs...have not nudged their claims across the line from conceivable to plausible").

In deciding a Rule 12(b)(6) motion to dismiss, "the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint 'contains enough facts to state a claim to relief that is plausible on its face.'" *United States v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949-50. While Rule 8(a)(2) does not require a complaint to set out detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555*; see Hensley Mfg. Co. v. ProPride, Inc.,* 579 F.3d 603, 609, n.4 (6th Cir. 2009). Identifying and assuming the truth of well-pleaded factual allegations, the court must "then determine whether they plausibly give rise to an entitlement to relief," *Iqbal,* 129 S.Ct. at 1950, "under some viable legal theory," *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S.Ct. at 1949 (citations and quotations omitted).

## I. Sufficiency of Plaintiff's Claims

### A. Settlement Agreement Impact on Claims/First Cause of Action

Defendant first argues that Plaintiff fails to state a claim that any debt he owes to Plaintiff is nondischargeable because the Settlement Agreement is the sole basis of any obligation between the parties and all claims that were or could have been raised in the state court action were merged into the Settlement Agreement. Plaintiff's complaint does set forth facts from which, if proven, a breach of the Settlement Agreement could be found. And it is true that a mere breach of contract, without more, does not render a consequent debt nondischargeable, *see McPheron v. Bice (In re Bice)*, 139 B.R. 662, 666 (Bankr. N.D. Ohio 1991). However, that does not end the analysis in this case, at least with respect to Plaintiff's first and second causes of action.

Plaintiff's first cause of action is based on conduct that was the subject of the state court action. While the Settlement Agreement addressed and released all claims relating to that conduct, the court finds that, in light of *Archer v. Warner*, 538 U.S. 314 (2003), Defendant's "merger" argument is not well taken. In *Archer*, the United States Supreme Court addressed the issue of whether a debt for money promised in a settlement agreement that completely addressed and released every underlying state law claim can also amount to a debt for money obtained by fraud, within the terms of the nondischargeability statute. *Id*. at 319. The Court interpreted the nondischargeability provision as applying to all debts that *arise out of* fraud. *Id*. at 321. It explained that "'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge,' no matter what their form." *Id.* The Court found that a debt embodied in the settlement of a fraud case arises out of the underlying fraud. *Id.* It concluded, therefore, that the settlement and releases did not bar the creditor from showing that the settlement debt arose out of fraud and was nondischargeable. *Id*. at 323.

Under *Archer,* the mere fact that Plaintiff has previously reduced his claims to settlement does not bar further inquiry into the true nature of the debt. *See id.* at 320-21. In his first cause of action, Plaintiff does not rely solely on Defendant's breach of the Settlement Agreement. Rather, he alleges that the debt owed by Defendant under the Settlement Agreement is nondischargeable as a debt for fraud and defalcation while acting in a fiduciary capacity and as a debt for a willful and malicious injury. Although Plaintiff does not specify in the first cause of action the specific subsections of § 523 that he is proceeding under, in his opposition, he argues that Defendant's obligations under the Settlement Agreement are nondischargeable under § 523(a)(4) and (a)(6).

Under § 523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. 11 U.S.C. § 523(a)(6). Thus, Plaintiff must plead that

5

Defendant's conduct caused him an injury and that the injury from which the debt arises was both willful and malicious. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001). The court finds Plaintiff's allegations regarding Defendant's collusion with Plaintiff's former spouse in order to force a sale of Plaintiff's stock at a price substantially less than market value and that this conduct resulted in a willful and malicious injury are well-pleaded and sufficiently allege a claim of nondischargeability under § 523(a)(6) that is plausible on its face. That is not the case, however, to the extent Plaintiff's first cause of action is brought under § 523(a)(4).

Section 523(a)(4) provides that a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny is nondischargeable. In his first cause of action, Plaintiff alleges the debt arises from Defendant's fraud or defalcation while acting in a fiduciary capacity; he does not allege embezzlement or larceny. To satisfy the "fiduciary" pleading requirement, Plaintiff must set forth facts that establish that Defendant was a "fiduciary" under § 523(a)(4). The Sixth Circuit has adopted a narrow interpretation of "fiduciary" as used in § 523(a)(4). *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). In order to trigger the fraud or defalcation provision in that statute, a debtor must hold funds in a trust for the benefit of a third party. *Id.* at 179. Furthermore, the types of trusts that will trigger the fraud or defalcation provision of § 523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180. Absent an express trust relationship, an action for fraud or defalcation while acting in a fiduciary capacity does not arise under § 523(a)(4), even if there otherwise exists a fiduciary relationship between the parties that is recognized by state law.

Plaintiff does not allege any facts from which, if proved, an express trust relationship could be found. Plaintiff alleges only that the parties owed each other a fiduciary duty as shareholders in Air-Ride, Inc., his stock in which Defendant allegedly caused to be seized and sold. As such, Plaintiff has not alleged a dischargeability claim under § 523(a)(4) that is plausible on its face. Defendant's motion will be granted as to the § 523(a)(4) claim, only, in Plaintiff's first cause of action.

### B. Second Cause of Action

Plaintiff's second cause of action is also brought under § 523(a)(4) and (a)(6). He alleges that each party is a fifty-percent shareholder of Fortress and, as such, Defendant owed him a fiduciary duty. He further alleges that Defendant sold real property belonging to Fortress without his knowledge and converted the funds he obtained to his own use. Plaintiff alleges that the sale resulted in a willful and malicious injury to him and constituted fraud or defalcation while acting in a fiduciary capacity, and/or embezzlement and/or

6

larceny.

Under § 523(a)(6), a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. 11 U.S.C. § 523(a)(6). Thus, Plaintiff must plead that Defendant's conduct caused him an injury and that the injury from which the debt arises was both willful and malicious. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001). For reasons discussed more fully in Part II below, the court finds Plaintiff's allegations sufficiently allege a claim under § 523(a)(6).

For the same reasons discussed with respect to his first cause of action, Plaintiff has not alleged a dischargeability claim under § 523(a)(4) in his second cause of action based on Defendant's fraud or defalcation while acting in a fiduciary capacity. Nor has he alleged a claim under § 523(a)(4) based on Defendant's embezzlement or larceny of Fortress property. Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). To prevail under § 523(a)(4) on the basis of embezzlement, a plaintiff must prove: (1) he entrusted his property to the defendant; (2) the defendant appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Chapman v. Pomainville (In re Pomainville)*, 254 B.R. 699, 705 (Bankr. S.D. Ohio 2000) (citing *Brady*, 101 F.3d at 1173). For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 165-66 (Bankr. N.D. Ohio 2003). "Larceny differs from embezzlement only in 'the manner in which the funds or property come into the possession of a party.'" *Lisk v. Criswell (In re Criswell)*, 52 B.R. 184, 202 (Bankr. E.D. Va. 1985) (quoting *In re Graziano*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)); *Baker v. Wentland (In re Wentland)*, 410 B.R. 585, 596 (Bankr. N.D. Ohio 2009) ("Embezzlement differs from larceny in that the embezzler's initial acquisition of the property is lawful."). In either case, however, plaintiff must allege that the object of the embezzlement or larceny is property of the plaintiff. *See Pomainville*, 254 B.R. at 705. In this case, because Plaintiff alleges only that property of Fortress (real estate in Tennessee) rather than his own was embezzled or wrongfully taken, his complaint does not contain allegations respecting all material elements to sustain a judgment of nondischargeability under § 523(a)(4).

**C. Third Cause of Action**

In his third cause of action, construed in a light most favorable to Plaintiff, Plaintiff alleges that a provision of the Settlement Agreement, which incorporates the Option Agreement, limited the amount of

a mortgage that Defendant could obtain on Fortress property and that Defendant violated this provision when he executed a $700,000 note in favor of CoAmerica Leasing Corporation. Plaintiff does not specify under which subsection of § 523 he is proceeding but alleges that Defendant's conduct breached a fiduciary duty owed to Plaintiff and that the debt Defendant owes to Plaintiff should be found nondischargeable "because of his continual ongoing breaches of fiduciary duty and wrongful activities some of which were coupled with misrepresentation and fraud." [Doc. # 1, Complaint, ¶ 30]. To the extent Plaintiff attempts to allege that any resulting debt is nondischargeable under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, his allegations are once again insufficient for the same reasons discussed above. And Plaintiff's general reference to "activities some of which were coupled with misrepresentation or fraud" is wholly insufficient to allege with the required specificity a debt for fraud. *See* Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b) (providing that "a party must state with particularity the circumstances constituting fraud or mistake"). While the Sixth Circuit reads the requirements of Rule 9 "liberally," *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993), it still requires a complaint alleging fraud to state, "at a minimum," the time, place and content of any alleged misrepresentation, the fraudulent scheme of defendant, the fraudulent intent of the defendant and the injury resulting from the fraud. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444-45 (6th Cir. 2008). The bottom line is "whether the complaint places the defendant on 'sufficient notice of the misrepresentation,' allowing the defendants to 'answer in an informed way plaintiffs [sic] claim of fraud.'" *Foamex L.P.*, 2 F.3d at 162 (quoting *Brewer v. Monsanto Corp.,* 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)). Plaintiff's allegation of "fraud and misrepresentation " is a conclusory label lacking any of the fundamental facts necessary to meet the pleading standards of Rule 9 even as "liberally" interpreted by the Sixth Circuit. Defendant cannot reasonably respond to this allegation in any informed manner.

Plaintiff's third cause of action alleges nothing more than a breach of contract and breach of a fiduciary duty that does not involve trust property, neither of which, without more, would entitle Plaintiff to a nondischargeability determination under § 523(a)(4). *See In re Garver,* 116 F.3d at 179 (holding that "[t]he mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present"); *McPheron*, 139 B.R. at 666 (stating that a breach of contract, without more, does not render a consequent debt nondischargeable). And the complaint contains no allegation that the conduct that is the subject of Plaintiff's third cause of action resulted in a willful and malicious injury so as to allege a nondischargeability claim under § 523(a)(6). Consequently, Defendant's motion will be granted as to the third cause of action.

8

**D. Fourth Cause of Action**

Defendant argues that Plaintiff's fourth cause of action does not state a claim under § 523 and should, therefore, be dismissed. Plaintiff's fourth cause of action seeks a declaratory judgment that a mortgage executed by Defendant in favor of Plaintiff created a valid and enforceable lien. While it is true that this is not a claim under § 523, that is not a basis for dismissing the claim under Rule 12(b)(6).[3]

## II. Direct v. Derivative Action

Defendant argues that the second and third causes of action should be dismissed since those claims belong to Fortress, not Plaintiff, and Plaintiff has brought a direct action rather than a derivative action on behalf of the corporation. Having already concluded that Plaintiff's third cause of action will be dismissed, the court addresses this argument as to the second cause of action only.

In support of his argument, Defendant cites *Adair v. Wozniak*, 23 Ohio St. 3d 174 (1986), and *Grand Council of Ohio v. Owens*, 86 Ohio App. 3d 215 (1993), for the general proposition that a cause of action for mismanagement of a corporation is a claim that belongs to the corporation, not individual shareholders. In response, Plaintiff argues that (1) the claims belong to him because he is the sole shareholder of Fortress, (2) Defendant's conduct constitutes a breach of the Settlement Agreement and Option Agreement, to which Fortress was not party, and that he therefore has an individual claim against Defendant, and (3) Defendant's conduct constitutes a breach of a fiduciary duty owed to Plaintiff, for which a claim may be brought in a direct action under the holding of *Crosby v. Beam*, 47 Ohio St. 3d 105 (1989).

In support of his first argument, Plaintiff asserts facts in his opposition that are not included as, and that conflict with, facts alleged in the complaint. Specifically, he asserts that Defendant's shares of stock in Fortress were put in escrow to assure Defendant's performance under the terms of the Settlement Agreement and that due to Defendant's default of that agreement, all of the Fortress stock now belong to

---

[3] The court is concerned about subject matter jurisdiction to determine Plaintiff's fourth cause of action under 28 U.S.C. §§ 1334 and 157. When an adversary proceeding presents multiple causes of action, as in this action, courts differ as to whether the jurisdictional determination should be made as to the whole proceeding or on a claim-by-claim basis. This court agrees with the rationale of those courts that have found a claim-by-claim approach to be the only approach consistent with the teachings of *Marathon*. *Halper v. Halper*, 164 F.3d 830, 839 (3rd Cir. 1999); *see also Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420, 425 (D. Mass. 1995) ("[T]he word 'proceeding' must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. Any broader meaning would fail to comply with the Constitutional concerns of *Marathon*."); *Beneficial Nat'l Bank USA v. Best Receptions Sys., Inc. (In re Best Receptions Sys., Inc.)*, 220 B.R. 932, 946 (Bankr. E.D. Tenn. 1998) (agreeing that "each claim must, on its own, satisfy the requirements of § 157(b)"); *Bliss Tech., Inc. v. HMI Indus., Inc. (In re Bliss Tech, Inc.)*, 307 B.R. 598, 603 (Bankr. E.D. Mich. 2004). The issue of jurisdiction over Plaintiff's fourth cause of action will be deferred to another day since other claims over which jurisdiction is clear are not being dismissed. Defendant's motion is brought only under Rule 12(b)(6), not under Rule 12(b)(1), and the parties have not addressed subject matter jurisdiction over this claim. Subject matter jurisdiction is not waived as a defense if omitted from a Rule 12 motion, Fed. R. Civ. P. 12(h), and "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). *See Mich. Employment Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.)*, 930 F.2d 1132, 1137-38 (6th Cir. 1991).

Plaintiff. However, in the complaint, Plaintiff alleges that he "*is* and has been the owner of 50% of the outstanding shares in Fortress. . . ." [Doc. # 1, Complaint, ¶ 18 (emphasis added)]. Thus, to the extent his argument is valid that 100% ownership of the stock would entitle him to bring a direct rather than derivative action, Plaintiff has failed to allege sufficient facts to show standing based on such ownership. *Cf. Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 730 (6th Cir. 2009) (affirming dismissal of claim where the plaintiffs did not allege sufficient facts to show federal taxpayer standing). Nevertheless, the court finds Plaintiff's second and third arguments well taken.

In *Adair*, cited by Defendant, the Ohio Supreme Court sets forth the general rule that "only a corporation and not its shareholders can complain of an injury sustained by, or a wrong done to, the corporation." *Adair*, 23 Ohio St. 3d at 176. However, the court explained that "this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from contract or otherwise owed directly by the wrongdoer to the shareholder." *Id.* The court held that "a shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." *Id.* at 178. In so holding, the court distinguished cases in which the plaintiff acquired standing to bring a direct action for breach of contract because of the existence of a separate contract between himself and the defendant or in which the plaintiff brought a personal cause of action based on a loan to the corporation for which he gave a personal guaranty. *Id.* at 177 (distinguishing *Buschmann v. Prof'l Men's Assn.*, 405 F.2d 659 (7th Cir. 1969), and *Sacks v. Am. Fletcher Nat'l Bank & Trust Co.*, 279 N.E.2d 807 (Ind. 1972)). The court explained that, under both of those circumstances, the harm that the plaintiffs alleged was different in kind than that suffered by the corporation in that it arose from the plaintiffs' direct contractual relationship with the defendants. *Id.*

In this case, Plaintiff alleges a direct contractual relationship with Defendant as both are parties to the Settlement Agreement and Option Agreement. The court finds allegations in Plaintiff's second cause of action that Defendant, "without regard to his obligations under the Settlement Agreement or the Option Agreement, . . . sold real property belonging to Fortress in the State of Tennessee and converted the funds he obtained to his own purposes and use" adequately alleges a breach of one or both of those agreements. [Doc. # 1, Complaint, ¶ 22]. Plaintiff further alleges that the injury caused by Defendant's conduct was willful and malicious. [*Id.*, ¶ 26]. Willfulness and malice may be alleged generally. Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). While a breach of contract alone does not render a consequent debt nondischargeable, *McPheron*, 139 B.R. at 666, the debt is nondischargeable under § 523(a)(6) where the resulting injury was willful and malicious. *See The Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620,

10

626 (B.A.P. 6th Cir. 2000). Because Plaintiff has alleged a nondischargeability claim under § 523(a)(6) based upon his contractual relationship with Defendant, he has standing to bring the claim in a direct action. *See Adair*, 23 Ohio St. 3d at 176-77.

Plaintiff also argues that Defendant's conduct constitutes a breach of a fiduciary duty owed to him as a fifty percent shareholder of Fortress that caused him an injury that was willful and malicious and for which a claim may be brought in a direct action under the holding of *Crosby v. Beam*, 47 Ohio St. 3d 105 (1989). In *Crosby*, minority shareholders of a close corporation brought suit against majority shareholders for a breach of fiduciary duties. The court explained that majority or controlling shareholders of a close corporation breach their fiduciary duty to minority shareholders when control of the stock is used to give the majority or controlling shareholders benefits that are not shared by the minority. *Id.* at 109. The court further explained that "[w]here such a breach occurs, the minority shareholder is individually harmed." *Id.* The court found that "[w]hen such harm can be construed to be individual in nature, then a suit by a minority shareholder against the offending majority or controlling shareholders may proceed as a direct action." The court also stated that if it required a minority shareholder to bring a derivative action in such circumstances, any recovery would accrue to the corporation and remain under the control of the wrongdoers such that a derivative remedy would not be an effective remedy. *Id.*

Although Defendant is a fifty percent shareholder and not a majority shareholder as was the case in *Crosby*, a reasonable inference from Plaintiff's allegation that Defendant had the power to vote all of the shares of the corporation pursuant to the Option Agreement is that Defendant is a controlling shareholder. In any case, Ohio courts have imposed the heightened fiduciary duty owed to minority shareholders of a close corporation where the parties were equal shareholders. *See McLaughlin v. Beeghly,* 84 Ohio App. 3d 502 (1992)*; Morrison v. Gugle*, 142 Ohio App. 3d 244, 255 (2001); *DeHoff v. Veterinary Hosp. Operations of Central Ohio, Inc.*, No. 02AP-454, 2003 WL 21470388, *13, 2003 Ohio App. LEXIS 3040, *35 (Ohio App. June 26, 2003). Thus, Plaintiff has alleged sufficient facts from which a fiduciary duty can be found. Plaintiff also alleges sufficient facts from which a factfinder could conclude that Defendant used his control of the Fortress stock for his own benefit and that the benefit was not shared with Plaintiff. Under such circumstances, the *Crosby* court has indicated that a shareholder is individually harmed and may bring a direct action for such harm.

Although *Crosby* may be distinguishable since it involved a plaintiff that was a minority shareholder, this court does not find that distinction to be determinative in this case. Ohio courts have found that a shareholder with equal ownership in a corporation could bring a direct action for breach of fiduciary duty. *See Gensemer v. Hallock*, 125 Ohio App. 3d 84, 91-91 (1997) (noting that one important reason for

requiring shareholders to bring derivative actions in most situations is to avoid the multiplicity of direct actions that would encumber the courts if every shareholder were allowed to maintain his own, separate action); *DeHoffi,* 2003 WL 21470388 at *14 (finding that the usual concerns that generally preclude a shareholder from bringing an individual action are not present where the appellee and appellant were both fifty percent shareholders in the corporation); *Medina v. Perumbeti*, No. 66732, 1994 WL 716539, *2-3, 1994 Ohio App. LEXIS 5809, *6-8 (Ohio App. Dec. 22, 1994) (finding a direct action proper and that the rule in *Crosby* governed where there were only three shareholders and the plaintiff shareholder's breach of fiduciary duty claim was against the other two shareholders since there were no other shareholders who could have sustained an injury in common with the plaintiff). *But see Kable v. Trinity Fin'l Corp.*, No. 07-CV-1131, 2008 WL 687225 (S.D. Ohio March 11, 2008) (finding *Crosby* inapplicable where the parties are fifty percent shareholders). In this case, where Plaintiff alleges an injury due to a breach of fiduciary duty that constitutes an individual harm under *Crosby*, and where he is the only shareholder allegedly injured by Defendant's conduct, he may bring his claim as a direct claim.

Neither *Adair* nor *Grand Council of Ohio* cited by Defendant require a different result. In *Adair*, the court held that "a plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation. *Adair,* 23 Ohio St. 3d at syllabus. *Adair* is distinguishable in that it involved a suit against third parties who, unlike the defendants in *Crosby,* had no duty owed directly to the shareholders. *See id.* at 177. In *Grand Council of Ohio,* members of a fraternal benefit society brought suit against members of the board of governors of the corporation. *Grand Council of Ohio,* 86 Ohio App. 3d at 217-18. *Crosby* is neither discussed nor cited and there is no indication that the corporation was a close corporation so as to give rise to a fiduciary duty, the breach of which could cause "individual harm." *Grand Council of Ohio* is also distinguishable from those cases involving equal shareholders in that the court held that because "the wrongs alleged by plaintiffs' complaint affect all shareholders equally, plaintiffs' action is derivative in nature." *Id.* at 221. As discussed above, in this case, Plaintiff is the only shareholder allegedly harmed by Defendant's conduct. Defendant's motion to dismiss Plaintiff's second cause of action to the extent brought under § 523(a)(6) will be denied.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion to Dismiss [Doc. # 11] be, and hereby is, **GRANTED** as to Plaintiff's first and second causes of action to the extent brought under 11 U.S.C. § 523(a)(4) and Plaintiff's third cause of action, and is **DENIED** as to Plaintiff's first and second causes of action to the extent brought under 11 U.S.C. § 523(a)(6) and Plaintiff's fourth cause of action.