**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: January 31 2013**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 09-30996 |
| | ) | |
| Albert L. Mackey, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3109 |
| | ) | |
| Stephen Sapp, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Albert L. Mackey, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER REGARDING
MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE AFFIDAVIT**

This adversary proceeding is before the court after oral argument on Plaintiff's Motion for Summary Judgment [Doc. # 56], Defendant's response [Doc. # 66], and Plaintiff's reply [Doc. #69], and Defendant's Motion for Summary Judgment [Doc. # 65], Plaintiff's opposition [Doc. # 68], and Defendant's reply [Doc. # 70]. Also before the court and addressed at oral argument is Plaintiff's motion to strike the affidavits of Karen Stock and the issue of whether the affidavit of Marvin A. Robon, Plaintiff's attorney, should be stricken that was raised *sua sponte* by the court. After oral argument, on further review of Plaintiff's Motion for Summary Judgment and in the interest of judicial economy and efficiency, the court granted Plaintiff

until September 21, 2012, to supplement his motion with evidence in support of his issue preclusion argument. Plaintiff filed that supplement on September 20, 2012. [Doc. # 90]. A second affidavit of Plaintiff was then filed on January 18, 2013. The court will address *sua sponte* the propriety of Plaintiff's second affidavit as it relates to the summary judgment motions.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under, arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I) and (K). For the reasons that follow, the parties' motions for summary judgment will be denied, Plaintiff's motion to strike the Stock affidavits will be denied, and the affidavits of Marvin A. Robon and Plaintiff will be disregarded by the court.

Initially, the court addresses Plaintiff's motion to strike the affidavits of Karen Stock, the propriety of attorney Marvin Robon's affidavit and Plaintiff's second affidavit filed on January 18, 2013.

**Motion to Strike Stock Affidavits**

Plaintiff seeks an order striking the affidavits of Karen Stock filed by Defendant in support of his motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. Plaintiff argues as a basis for striking the affidavits that Stock failed to appear for a deposition noticed by Plaintiff. While imposing such a sanction may be appropriate under certain circumstances where a party fails to appear for a properly noticed deposition, *see, e.g.,* Fed. R. Civ. P. 37(d); Fed. R. Bankr. P. 7037, it is not appropriate in this case. The deadline for discovery in this case had been extended to September 30, 2011, [Doc. # 43], and no further extension was requested or ordered. The notice of the Stock deposition was not served until January 13, 2012, over three months after the discovery deadline had passed. [Doc. # 54]. On these facts, sanctions are not appropriate, and Plaintiff's motion to strike will be denied.

**Robon Affidavit**

Shortly after this adversary proceeding was commenced, Defendant filed a motion to disqualify Plaintiff's attorney Marvin Robon. Defendant relied in part on Rule 3.7 of the Ohio Rules of Professional Conduct, which provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness" unless one or more of three circumstances exist, none of which were applicable. The court denied the motion to disqualify, relying on attorney Robon's representation to the court that any necessary testimony could be obtained from other sources such that he would not be required to testify.

2

Nevertheless, attorney Robon submitted his own affidavit in order to assert facts in support of Plaintiff's motion for summary judgment and in opposition to Defendant's motion for summary judgment.

Although this proceeding has not reached trial, materials cited to support or dispute a fact at the summary judgment stage of a proceeding must be able to be presented in a form that would be admissible in evidence at trial, *see* Fed. R. Civ. P. 56(c)(2); Fed. R. Bankr. P. 7056, and by an affiant who is competent to testify on the matters stated, *see* Fed. R. Civ. P. 56(c)(4); Fed. R. Bankr. P. 7056; *Lewis v. Horace Mann Ins. Co.*, 410 F. Supp. 640, 647 (N.D. Ohio 2005)(applying rule as Rule 56(e) before it was renumbered as Rule 56(c)(4)). Because attorney Robon represented to the court that his testimony was not necessary in order to avoid disqualification early in this proceeding, and because he is not competent to testify at trial and his averments in his affidavit cannot be presented as admissible testimony at trial, the court will strike his affidavit. *See Mills v. Caruso*, No. 1:09-cv-249, 2010 WL 1254576, *2, 2010 U.S. Dist. LEXIS 29141, *6 (W.D. Mich. 2010) (disregarding affidavit of Plaintiff's attorney submitted in an attempt to create a genuine issue of fact for trial, where he would not be available at trial as a witness under Rule 3.7 of the Michigan Rules of Professional Conduct, identical to the provision under Ohio's Rule 3.7).

**<u>Second Sapp Affidavit</u>**

An affidavit of Plaintiff was filed with Plaintiff's motion for summary judgment. [Doc. # 56, Ex. C]. Defendant filed a renewed motion to disqualify attorney Robon on December 19, 2012, [Doc. # 94], arguing that the affidavit of attorney Robon discussed above, among other matters, shows that attorney Robon is a trial witness. In response to Defendant's renewed disqualification motion, attorney Robon filed another affidavit of Plaintiff, [Doc. # 98], virtually duplicating attorney Robon's affidavit. The court assumes that the purpose of this second affidavit of Plaintiff is to show that there is another source for the evidence presented in attorney Robon's affidavit. But since the second affidavit of Plaintiff is not so limited on its face, the court will make clear its position on whether this affidavit may be considered in support of Plaintiff's motion for summary judgment.

Oral argument on the summary judgment motions occurred on July 31, 2012, after which they were taken under advisement. On September 10, 2012, the court *sua sponte* reopened the record, Fed. R. Civ. P. 56(e); Fed. R. Bankr. P. 7056, for the limited purpose of allowing Plaintiff to support his motion for summary judgment with what the court deems to be material parts of an underlying state court record. [Doc. # 88]. Plaintiff timely submitted additional materials in response to the court's order. [Doc. # 90]. At that point, the record on the summary judgment motions was re-closed. The court will therefore not consider the newly filed affidavit of Plaintiff in connection with the pending summary judgment motions. It is untimely

for that purpose if it was so intended. The court will only consider the first affidavit of Plaintiff in connection with the pending summary judgment motions.

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[1] For many years, Plaintiff and Defendant were co-owners of companies known as Air-Ride, Inc. ("Air-Ride") and Fortress Properties, Inc., ("Fortress") with each party having a fifty percent interest in each company. Fortress's purpose was to own the truck terminal used by Air-Ride, including a truck terminal located on Sager Road in Lucas County, Ohio ("Sager Road Property"). Fortress also owned a truck terminal in Tennessee. [Doc. # 56, Ex. C, Pl. Aff. ¶¶ 2-4]. Defendant assumed control over the day to day operations of Air-Ride in the mid-1990s.

Plaintiff sued Defendant in the Court of Common Pleas of Fulton County, Ohio, ("state court"), alleging claims of breach of contract, fraud and breach of fiduciary duties. [*See id.,* Ex. A]. Plaintiff's breach of fiduciary duty claim included allegations that Defendant colluded with Plaintiff's ex-wife in order to trigger a buy out clause that caused significant loss to Plaintiff. [Doc. # 90, Ex. B, ¶¶ 16-44]. On September 1, 2006, a jury returned interrogatory findings mostly in favor of Plaintiff, specifically that Defendant breached a contract with Plaintiff and breached fiduciary duties owed to Plaintiff but did not commit a fraud against Plaintiff. [Doc. # 56, Ex. A, Interrogatory Nos. 4, 6 & 10]. The jury awarded Plaintiff compensatory damages of $55,000.00 on the breach of contract claim, $300,000.00 on the breach of fiduciary duties claim and punitive damages of $2,000,000.00, finding that Defendant acted with "hatred, ill will, or a spirit of revenge" in committing the breach of fiduciary duties. [*Id.* at Interrogatory Nos. 5, 7, 12 & 13]. The jury further found that Plaintiff was entitled to an award of attorney fees in an amount to be determined by the state court. [*Id.* at Interrogatory No. 14].

On October 20, 2006, a "Judgment Entry" was entered by the state court denying Defendant's motions for a new trial, for a remittitur, and for judgment notwithstanding the verdict, and stating that the court would reserve ruling on the proper form of a final judgment until after ruling on Plaintiff's motion for award of attorney fees. [Doc. # 66, Ex. G, pp. 4-5]. On November 17, 2006, Defendant filed a notice of appeal from the October 20, 2006, Judgment Entry, the stipulated jury interrogatories, and the state court's earlier judgment denying Defendant's motion for partial summary judgment. [Doc. # 90, Ex. D, p. 1]. On November 22, 2006, the parties entered into a Settlement Agreement that provides for settlement of the

---

[1] Although most of the documents submitted in connection with the parties' motions were not properly authenticated, *see, e.g., United States v. Billheimer,* 197 F. Supp. 2d 1051, 1058 n.7 (S.D. Ohio 2002); *see also* Fed. R. Evid. 901-903, neither party has objected to the unauthenticated documents submitted by the other party, so the court will consider all such documents. *See Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 89 (6th Cir. 1993).

4

claims asserted by Plaintiff in the state court action "and other matters pertaining to Air-Ride and Fortress." [Doc. # 55, Ex. 1, p. 1]. On March 13, 2007, the state court entered a stipulated Order of Dismissal and Satisfaction of Judgment, stating that "[t]he Settlement Agreement provides for a complete release and satisfaction of any Judgment hereinbefore rendered in this case" and ordering that "any Judgment be marked as 'satisfied' pursuant to the Settlement Agreement." [Doc. # 90, Ex. C]. Thereafter, Defendant's appeal was dismissed pursuant to a notice of dismissal filed by him on March 13, 2007. [*Id.,* Ex. E].

The Settlement Agreement provides that, at signing, Defendant pay Plaintiff the sum of $550,000.00, $350,000.00 of which constitutes a deposit on the purchase price for the exercise by Defendant of an option to purchase all of Plaintiff's shares of common stock in Fortress at a specified price pursuant to the Option Agreement referred to therein. [Doc. # 55, Ex.1, ¶¶ 1 & 4]. Under the Option Agreement, Defendant was entitled to exercise the option at any time on or before December 31, 2012. [*Id.*, Ex. 1 & attached Ex. C, ¶ 1]. The Option Agreement provided for termination of the agreement as follows:

> **Termination.** Upon the expiration of the Option or at the election of [Defendant] upon written notice to [Plaintiff], whichever is earlier, this Agreement shall be terminated and the Deposit shall be promptly returned to [Defendant]. Notwithstanding the foregoing, on the date of such expiration or election, whichever is earlier, 50% of the equity shown on the balance sheet of Fortress must be as (sic) least $385,000. If [Plaintiff] fails to refund the Deposit when due, [Defendant's] exclusive remedy is to offset the amount owed to [Plaintiff] under the Promissory Note [also executed pursuant to the Settlement Agreement].

[*Id*. at ¶ 2.D.]. The Option Agreement further provided Defendant with authority to "vote all of the shares of Fortress as he may deem appropriate, in his sole discretion," subject to two restrictions:

> A. [Defendant] may not vote the Shares to issue cash to himself from any mortgage or lien on property of Fortress.
>
> B. [Defendant] may not vote the Shares to obtain a mortgage or mortgages on Fortress property in excess of (i) the current balance of the mortgages as of the date hereof (approximately $261,000) plus (ii) $550,000 plus (iii) mortgages for improvements to the Fortress property.

[*Id*. at ¶ 3]. The Option Agreement includes the following integration clause: "This Agreement and the Settlement Agreement contain the entire agreement between the parties and there are no agreements, representations or warranties, oral or written, which are not set forth herein." [*Id.* at ¶ 7.G.].

Pursuant to the Settlement Agreement, Defendant also executed (1) a cognovit promissory note ("Promissory Note") in favor of Plaintiff in the amount of $709,000.00 at six percent interest, payable quarterly for fifteen years, in consideration for which Plaintiff confirmed the assignment of all of his shares of stock in Air-Ride to Defendant, [*Id.*, Ex. 1, ¶ 2 and attached Ex. A], and (2) a Consulting Agreement

5

under which Air-Ride retained Plaintiff as a consultant for fifteen years for compensation to be paid quarterly in the amount of $21,069.33, [*Id.,* Ex. 1, ¶ 3 and attached Ex. B]. The first payment on the Promissory Note was due on February 22, 2007, and thereafter "on the same day every three (3) months until paid in full." [*Id.,* Ex. 1 and attached Ex. A]. The Promissory Note provides that "[i]f . . . any payment hereunder is not paid when due or within ten (10) days after written notice from the Lender . . . then the entire principal amount outstanding shall at once become due and payable at the option of the Lender." [*Id.*].

As required by the Settlement Agreement, Defendant executed a mortgage on his home ("Mackey Mortgage") securing his obligations under the Promissory Note and Consulting Agreement. [*Id.,* Ex. 1, ¶ 9(a) and attached Ex. F]. The Mackey Mortgage provides that "this mortgage shall expire and be void on the earlier of December 31, 2011 or the prepayment of $150,000 over and above the scheduled payments on the Promissory Note which this Mortgage secures, to be applied toward the principal of the Promissory Note." [*Id.* at Ex. F]. Similarly, the Settlement Agreement provides that Plaintiff shall release the Mackey Mortgage upon the earlier to occur of December 31, 2011, or the $150,000 prepayment by Defendant over and above the scheduled payments on the Promissory Note. [*Id.*, Ex. 1, ¶ 9(a)]. As additional security for Defendant's obligations under the Promissory Note and Consulting Agreement, Defendant's stock in Fortress is being held in escrow pursuant to an Escrow Agreement. [*Id.*, ¶ 9(c) and attached Ex. H]. Plaintiff last received a payment required under the Settlement Agreement in late 2008. [Doc. # 56, Ex. C, Pl. Aff., ¶13].

On April 27, 2007, Defendant executed a note on behalf of Fortress and in favor of Comerica Bank in the amount of $700,000.00. [Doc. # 66, Ex. K, Fixed-Rate Installment Note]. On the same date, Defendant executed a mortgage on behalf of Fortress and in favor of Comerica Bank, granting a security interest in Fortress's Sager Road Property ("Comerica Mortgage"). [Doc. # 66, Ex. K, Open-End Mortgage]. The Comerica Mortgage includes the following provisions:

> This Mortgage is made to secure when due . . . all existing and future indebtedness ("Indebtedness") to Mortgagee of Air-Ride, Inc. ("Borrower") and/or Mortgagor, including without limitation that certain promissory note of even date in the amount of Seven Hundred Thousand Dollars ($700,000). Indebtedness includes without limit any and all obligations or liabilities of Borrower and/or Mortgagor to Mortgagee. . . .
> . . . .
> The consideration for this Mortgage is the present and future advancement of funds by Mortgagee to Mortgagor or Borrower.

[*Id.* at pp. 1-2]. According to Defendant, he did not knowingly grant the mortgage to secure debt owed by Air-Ride and including Air-Ride in the Comerica Mortgage document was error. [Doc. # 66, Ex. F, ¶ 2].

6

In April 2008, Fortress sold the Tennessee truck terminal. [Doc. # 55, Def. Depo., pp. 11-12 and attached Ex. 2]. The Settlement Statement relating to that sale shows cash to the seller in the amount of $471,282.29. [*Id.*]. At the time of the sale, Plaintiff did not know that the property was being sold. [Doc. # 56, Ex. C, Pl. Aff., ¶ 8]. At the beginning of the 2008 tax year, Fortress's tax return reports assets that included cash in the amount of $14,652.00. [Doc. # 56, Ex. D; Doc. # 70, Ex. B]. At the end of the year, the 2008 tax return reports $137,447.00. [*Id.*]. Plaintiff received no distribution from the sale of the Tennessee property. [Doc. # 56, Ex. C, Pl. Aff., ¶ 10]. The sale proceeds were used to pay operating expenses of Fortress, to make payments on the Comerica Mortgage, and for the retirement of a debt owed to Air-Ride by Fortress that was incurred prior to December 31, 2006. [Doc. # 66, Ex. J, Stock Aff. ¶ 2]. No money from the sale went to Defendant personally. [*Id.*].

By a letter dated February 23, 2009, Defendant notified Plaintiff that he was terminating the Option Agreement and would not be exercising the option to purchase Plaintiff's shares of Fortress stock. [Doc. # 65, Ex. B]. In the letter, rather than requesting a cash refund, Defendant instructed Plaintiff as to the manner in which the $350,000.00 that was deposited on the purchase price of the shares at the time the Settlement Agreement was signed should be applied. [*Id.*]. Specifically, he requested that $168,003.94 of the refund be applied to cover both his quarterly payment that was due on February 22, 2009, under the Promissory Note and an additional payment of $150,000.00, which Defendant states in his letter requires Plaintiff to release the mortgage on Defendant's residence "based on the provisions in the Settlement Agreement." [*Id.*].

The balance sheet for Fortress prepared in the ordinary course of business as of February 28, 2009, shows total assets in the amount of $1,679,335.06, which amount includes cash, accounts receivable, real property and equipment less accumulated depreciation, and the $350,000.00 deposit on the option purchase price. [Doc. # 70, Ex. A, Stock Aff., ¶ 2, & attached Ex. B]. However, in his reply to Plaintiff's opposition to Defendant's motion for summary judgment and at the hearing on the motion, Defendant agreed that including the $350,000.00 deposit as an asset was an error. [*See* Doc. # 70, p. 5]. Adjusting the balance sheet accordingly, Fortress's assets are shown to total $1,329,335.06. The balance sheet also shows liabilities in the total amount of $502,530.52, which includes the Comerica debt owed by Fortress in the amount of $466,547.15. [Doc. # 70, Ex. B]. Thus, the balance sheet, as adjusted, shows total stockholder equity of $826,804.54. All assets listed on the February 28, 2009, balance sheet were recorded at historical cost, and there were no material changes in the figures set forth therein from February 22, 2009, through

7

February 28, 2009. [*Id.*, Ex. A, Stock Aff., ¶ 4-5].

On February 25, 2009, Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiff timely commenced this adversary proceeding by filing his a complaint to determine dischargeability of a debt owed to him by Defendant and to determine the validity of a mortgage on Defendant's residence.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

In cases such as this, where the parties have both filed motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). The fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under Rule 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

**II. Defendant's Motion for Summary Judgment**

Defendant's motion for summary judgment relates only to the fourth cause of action alleged in Plaintiff's complaint, which seeks a declaration that the Mackey Mortgage on Defendant's residence that Defendant granted Plaintiff as required by the Settlement Agreement is valid. According to Defendant, the undisputed evidence shows that he properly elected to terminate the Option Agreement, at which time he was entitled to a refund of the $350,000.00 that he had paid Plaintiff as a deposit with respect to that agreement, and that he directed that the $350,000.00 be applied to cover both his quarterly payment due on February 22, 2009, under the Promissory Note and an additional $150,000.00 prepayment on the Promissory Note. Under the terms of the Settlement Agreement, Plaintiff is required to release the Mackey Mortgage if such prepayment is made, and under the terms of the Mackey Mortgage, the Mackey Mortgage expires on the date of such prepayment.[2]

In response, Plaintiff first argues that on February 23, 2009, the date Defendant notified Plaintiff that he was terminating the Option Agreement, Defendant was already in default of the Settlement Agreement by failing to make the payment on the Promissory Note that was due on February 22, 2009, and thus lost any right under the Option Agreement "to make any type of election." [Doc. # 68, p. 3]. Thus, it is apparently Plaintiff's position that Defendant's breach excused Plaintiff from applying the $350,000.00 as instructed and releasing the mortgage on Defendant's home in accordance with the Option Agreement and Settlement Agreement. The court disagrees.

A breach of a portion of a contract does not discharge the obligations of the parties to the contract unless the breach is material. *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App. 3d 163, 170 (1990); *Bd. of Comm'rs of Clermont County, Ohio v. Village of Batavia*, No. CA2000-06-039, 2001 WL 185464, *3, 2001 Ohio App. LEXIS 712, *7 (Ohio Ct. App. Feb. 26, 2001). "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 142-43 (2008). However, "[f]ailure to perform within the time limits stated in a contract is generally not a material breach if performance is rendered within a reasonable time" unless the contract makes timely performance essential or expressly provides that time is of the essence. *United States v. Interstate Landscaping Co.*, 37 F.3d 1500 (Table), 1994 WL 481684, *6, 1994

---

[2] The Mackey Mortgage actually provides that the "mortgage shall expire and be void on the earlier of December 31, 2011 or the prepayment of $150,000 over and above the scheduled payments on the Promissory Note. . . ." [Doc. # 55, Ex. 1, attached Ex. F]. The parties have not argued, and the court therefore does not address, the significance of the December 31, 2011, date in that provision.

9

U.S. App. LEXIS 24419, *18-19 (6th Cir. Sept. 6, 1994).

In this case, the court assumes for purposes of this opinion that a material breach of the Promissory Note may excuse Plaintiff's performance under the Option Agreement, as both are incorporated into, and are integral parts of, the Settlement Agreement. *Cf. Christe v. GMS Mgmt. Co.*, 124 Ohio App. 3d 84, 88 (1997) ("Where one instrument incorporates another by reference, both must be read together."). Nevertheless, to the extent that Defendant was entitled to terminate the Option Agreement on February 23, 2009, and receive a refund of his $350,000.00 deposit, his quarterly payment due on February 22, 2009, that was directed by him to be paid from that deposit was only one day late. Neither the Promissory Note nor the Settlement Agreement provide that time is of the essence with respect to payments being made on the due date. Nor do the agreements otherwise make timely performance essential. In so finding, the court considers the fact that receiving the payment one day late deprived Plaintiff of no benefit otherwise expected under the Promissory Note. *See Intrak, Inc.*, 66 Ohio App. 3d at 170 (stating that the extent to which the injured party will be deprived of the expected benefit of the contract is a factor to be considered in determining the materiality of a breach). That timely payment was not essential to the fulfillment of Plaintiff's expectations under the Promissory Note is also suggested by the provision in the Note that if any payment "is not paid when due *or within ten (10) days after written notice from the Lender* . . . then the entire principal amount outstanding shall at once become due and payable at the option of the Lender." [Doc. # 55, Ex. 1 and attached Ex. A (emphasis added)]. For these reasons, the court finds that Defendant paying the quarterly payment due on the Promissory Note one day late does not constitute a material breach discharging Plaintiff's performance obligations under the Option Agreement.

Plaintiff also argues that a factual dispute exists as to whether Defendant met the requirement set forth in the Option Agreement for exercise of the election to terminate the Option Agreement and receive a refund of his deposit. Specifically, Plaintiff argues that a factual dispute exists regarding the requirement that, on the date of Defendant's election, fifty percent of the equity shown on the balance sheet of Fortress must be at least $385,000.00. The court agrees.

The Fortress balance sheet prepared on February 28, 2009, adjusted as set forth in this opinion, shows total stockholder equity of $826,804.54. And it is undisputed that there were no material changes in the figures set forth therein between February 22 and February 28, 2009. Thus, the balance sheet, on its face, meets the equity requirement in the Option Agreement. Nevertheless, a dispute exists as to the proper valuation of assets on the balance sheet.

It is undisputed that all assets listed on the balance sheet were recorded at historical cost. Plaintiff

10

asserts that real estate, which comprises most of Fortress's assets, should be valued at market value. However, the record is silent as to what method constitutes preparation in accordance with generally accepted accounting principles or in accordance with the manner in which Fortress's balance sheets were prepared prior to the parties entering into the Option Agreement. Thus, on the record before it, the court cannot determine whether the February 28 balance sheet was prepared in a manner intended by the parties when agreeing to the provision that fifty percent of the equity *shown on the balance sheet* of Fortress must be at least $385,000.00.

In addition, the Comerica Mortgage granting a security interest in Fortress's Sager Road Property secured indebtedness of both Air-Ride and Fortress. The balance sheet does not reflect, and the record is otherwise silent, as to how this affects the reporting of value of the real estate on Fortress's balance sheet. There is no evidence as to the amount of any indebtedness owed by Air-Ride and no evidence as to the proper method of reflecting on Fortress's balance sheet a security interest in such indebtedness to the extent it does exist.

Because, as discussed above, genuine issues for trial exist, Defendant's motion for summary judgment will be denied.[3]

### III. Plaintiff's Motion for Summary Judgment

In his complaint, Plaintiff alleges four causes of action. His first, second and third causes of action allege nondischargeability claims under 11 U.S.C. § 523(a)(4) and (a)(6). However, on February 4, 2010, the court granted Defendant's motion to dismiss Plaintiff's third cause of action and Plaintiff's first and second causes of action to the extent brought under § 523(a)(4). [Doc. # 21]. Plaintiff's remaining nondischargeability claims include only his first and second causes of action brought under § 523(a)(6). He moves for summary judgment on both causes of action.[4]

#### A. First Cause of Action

In his first cause of action, Plaintiff alleges that Defendant breached his fiduciary duty to him and colluded with Plaintiff's ex-wife in order to force the sale of Plaintiff's Air-Ride stock at a price

---

[3] Plaintiff also argues that the Fortress balance sheet does not accurately reflect the debt owed by Fortress to Comerica Bank. In support of his argument, Plaintiff offers an uncertified copy of a complaint filed by Comerica in United States District Court for the Northern District of Ohio wherein Comerica alleges that Fortress owes it $629,299.38, not $466,547.15 as set forth on the balance sheet. However, just as Plaintiff cannot rely on allegations in his own complaint in opposing a summary judgment motion, he cannot rely on allegations in Comerica's complaint in district court. Allegations of fact in a complaint do not constitute evidence of that fact that the court may consider on summary judgment.

[4] Although in his motion for summary judgment Plaintiff argues that the debt owed him by Defendant is nondischargeable under § 523(a)(2)(A), a claim under that provision is not alleged in Plaintiff's complaint.

11

substantially less than market value. Plaintiff alleges that he sued Defendant in state court and that a jury found that Defendant breached his fiduciary duty and awarded Plaintiff both compensatory and punitive damages. Plaintiff further alleges that the parties entered into a post-trial Settlement Agreement and that the debt owed by Defendant under the Settlement Agreement is nondischargeable as a debt for willful and malicious injury to Plaintiff "as determined by the state court jury." [Doc. # 1, ¶ 12-15].

In support of his motion for summary judgment, Plaintiff argues, in essence, that there is no genuine issue as to any material fact as to his first cause of action in light of the specific findings of the jury in the state court action. While not specifically labeled as such, Plaintiff's argument is a collateral estoppel, or issue preclusion, argument. The Supreme Court has confirmed that collateral estoppel principles apply in nondischargeability proceedings in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 284, n.11 (1991). The doctrine of collateral estoppel "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and *necessary to the judgment*, even if decided as part of a different claim or cause of action." *Markowitz*, 190 F.3d at 463 (6th Cir. 1999)(quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992))(emphasis added).

The United States Constitution's Full Faith and Credit clause, U.S. Const. art. IV, § 1, is implemented by 28 U.S.C. § 1738, the federal full faith and credit statute. Under 28 U.S.C. § 1738 a federal court must accord a state court judgment the same preclusive effect the judgment would have in state court. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). Collateral estoppel will apply to state court judgments where (1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue and (2) the issue was fully and fairly litigated in state court. *Markowitz*, 973 F.2d at 461. In determining whether a prior state court judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *Fordu,* 201 F.3d at 703. In this case, the court must thus apply Ohio issue preclusion principles to the state court proceedings.

Under Ohio law, there are four elements to the application of the doctrine of collateral estoppel: "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit." *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 814 (1993)(quoting *Monahan v. Eagle Picher Indus., Inc*., 21 Ohio App.3d 179, 180-81 (1984)); *see Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186,

12

189 (B.A.P. 6th Cir. 2002). The person asserting collateral estoppel carries the burden of pleading and proving its requirements by a preponderance of the evidence. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d 374, 378 (2010)(citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 198 (1983)); *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

The court will not address application of all of the elements of collateral estoppel under Ohio law because it finds that Plaintiff has not met his burden of showing that a final judgment was entered in the state court action. Under Rule 54 of the Ohio Rules of Civil Procedure, a "judgment" is defined to include "any order from which an appeal lies as provided in section 2505.02 of the Revised Code. A judgment shall not contain a recital of pleadings...or the record of prior proceedings." Civ. R. 54(A). Entry of judgment is governed by Rule 58 of the Ohio Rules of Civil Procedure, which provides that the court shall cause the judgment to be prepared upon, among other events, "a general verdict of a jury." Civ. R. 58(A). As relevant to this case, Section 2505.02 of the Ohio Revised Code defines a final order as one that may be "reviewed, affirmed, modified, or reversed, with or without retrial...that affects a substantial right in an action that in effect determines the action and prevents a judgment." Ohio. Rev. Code § 2505.02(B)(1).

Plaintiff offers Stipulated Jury Interrogatories completed by the jury in the state court action that include findings that Defendant breached fiduciary duties owed to Plaintiff and that Defendant "acted with hatred, ill will, or a spirit of revenge in committing the . . . breach of fiduciary duties." [Doc. # 56, Ex. A, pp. 7 & 13]. While these jury findings might arguably support a finding of a willful and malicious injury under § 523(a)(6), they do not, without entry of a final judgment, provide any basis for applying collateral estoppel. Nor does the court find in the state court record any general verdict form as a foundation for a judgment. *See* Civ. R. 49(A), (B); [Doc. #90, Ex.D (Defendant's Notice of Appeal stating "[n]o general verdict form was used.")]. There is no evidence even after the record was reopened by the court for supplementation that a final judgment was ever entered in the state court action.

In the absence of a final judgment, the jury findings and verdict cannot support Plaintiff's collateral estoppel argument under Ohio law. As Rule 58 of the Ohio Rules of Civil Procedure shows, a jury verdict has no operative force until a judgment is entered by the court. *See also Indus. Comm'n of Ohio v. Rogers*, 122 Ohio St. 134, 137 (1930) (overruled on other grounds in part by *Indus. Comm'n of Ohio v . Klaff*, 123 Ohio St. 451(1931))(jurors lack the power to make a verdict a self-sustaining finality, which is a power reserved to the judge); *State v. Teague*, Case No. 9-01-25, 2001 WL 1167482, *1, 2001 Ohio App. LEXIS 4386 (Ohio Ct. App. Sept. 28, 2001)("[I]t is self-evident that the force, authority, finality and effectiveness of a verdict is wholly dependent upon the judgement entered thereon by the court.").

13

The Ohio Supreme Court so determined in *Miller v. First Int'l Fidelity and Trust Building, Ltd.*, 113 Ohio St. 3d 474 (2007). In *Miller* a jury returned a verdict in favor of plaintiff, who then filed a motion for an award of prejudgment interest. A defendant appealed the trial court's order overruling its motions for judgment notwithstanding the verdict or for new trial before the trial court decided the plaintiff's prejudgment interest motion. The Ohio Supreme Court accepted the case on the issue "whether a journalized jury verdict is a final, appealable order when a motion for prejudgment interest has been filed and remains pending." *Miller*, 113 Ohio St. 3d at 474. Because the motion for prejudgment interest remained pending, the Ohio Supreme Court determined that the journalized jury verdict did not constitute a final appealable order under Revised Code § 2505.02. The jury verdict failed the basic test of whether the whole merits had been disposed of, leaving nothing more for the determination of the court, with the determination of an award of prejudgment interest being more than a ministerial task and one that instead required the meaningful exercise of the court's fact finding powers and discretion.

The Ohio Supreme Court's holding in *Miller* applies here. The fact that the amount of attorney's fees instead of prejudgment interest remained to be decided by the state court does not materially distinguish this case from *Miller*. Ohio law is replete with cases holding that the existence of an issue of the amount of an award of attorney's fees prevents an order or verdict from being final under Revised Code § 2505.02. S*ee, e.g., FirstMerit Bank, N.A. v. Moore,* 183 Ohio App. 3d 550, 554 (2009) (citing *Int'l Bhd. of Elec. Workers, Local Union No. 8 v. Vaughn Indus., LLC*, 116 Ohio St. 3d 335, 337 (2007) and stating that "when attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ. R. 54(B), an express determination that there is no just reason for delay, is not a final appealable order"). The outstanding issue of the amount of attorney's fees to be awarded to Plaintiff was similarly more than a ministerial act that required the exercise of the state court's fact finding powers.

Although the state court entered a "Judgment Entry" denying Defendant's motions for a new trial, for a remittitur, and for judgment notwithstanding the verdict, the court expressly stated that it would "reserve ruling on the proper form of a Final Judgment and Appealable Entry until after the Court makes a definitive ruling on Plaintiff's Motion for an award of Attorney Fees and costs." [Doc. # 66, Ex. G]. There is no Rule 54(B) "no just reason for delay" language in the Judgment Entry. On its face, the state court's Judgment Entry explicitly disclaims being a final judgment from which an appeal will lie because the amount of attorney's fees remained to be determined by the court.

Although Defendant did file an appeal, he acknowledges in his notice of appeal that no judgment entry had yet been filed. [Doc. # 90, Ex. D, p. 2]. After filing the appeal, the parties entered into the

14

Settlement Agreement and the appeal was voluntarily dismissed. [*Id.*, Ex. E]. Nor does the subsequent stipulated and voluntary Order of Dismissal and Satisfaction of Judgment entered in the trial court change the court's view. [*Id.*, Ex. C]. The document itself fails as a final judgment. *See Hensley v. Henry,* 61 Ohio St. 2d 277, 279 (1980)(In Ohio, "a plaintiff's voluntary dismissal does not operate as an adjudication on the merits;" internal quotations omitted); *Lewis*, 410 F. Supp. at 652-653 (citing Ohio cases for the principle that upon a dismissal otherwise than on the merits, all orders and actions rendered by the trial court during the pendency of the action are dissolved and incapable of res judicata effect). And the body of the document very carefully uses the language "any judgment" as a hedge that there is, in fact, no judgment to be satisfied, which this court finds to be the case. [*Id.*].

The court finds that an Ohio court would not afford the state court jury interrogatories, Judgment Entry on post-trial motions, notice of dismissal of appeal or Order of Dismissal and Satisfaction of Judgment any preclusive effect. The court does not find any other document in the state court record that has been submitted in this case that constitutes a final judgment entitled to collateral estoppel effect in this action. Neither the state court docket sheet nor any other document submitted by Plaintiff show entry of a final judgment. Having failed to meet his burden of showing that a final judgment was entered in the state court action, Plaintiff's reliance on the findings made by the jury in that case does not support application of the doctrine of collateral estoppel for purposes of summary judgment in this nondischargeability action.

In his first cause of action, Plaintiff also alleges that Defendant has not made all of the payments required under the Settlement Agreement. To the extent that he relies on Defendant's alleged breach of the Settlement Agreement as a basis for his nondischargeability claim under § 524(a)(6), he has not proven a willful and malicious injury. The fact that a party has breached a contract, even if done intentionally, will not independently support a finding of nondischargeability under § 523(a)(6). *Ward v. West (In re West)*, 446 B.R. 813, 817 (Bankr. N.D. Ohio 2010) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)); *see Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 8, 2004 WL 1544066, *6 (6th Cir. 2004) ("Consistent with Geiger, we have held that a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6).").

For the foregoing reasons, Plaintiff is not entitled to summary judgment on his first cause of action.

### B. Second Cause of Action

In his second cause of action, Plaintiff alleges that Defendant "stripped valuable assets of Fortress and converted them to [his] own use," [Complaint, ¶ 21], and that "without regard to his obligations under the Settlement Agreement or the Option Agreement, Defendant sold real property belonging to Fortress and converted the funds he obtained for his own purposes and use," [Complaint, ¶ 22]. Plaintiff further alleges

that the sale constitutes a willful and malicious injury, a debt for which is owed to Plaintiff in the amount of his share of the proceeds from the sale of the real property.

In his motion for summary judgment, Plaintiff argues that Defendant owes him debts for the following "wrongful" conduct: (1) Fortress's sale of the Tennessee truck terminal without Plaintiff's knowledge and Defendant's conversion of the proceeds to his own use and the use of Air-Ride, in which he then had a 100% ownership interest; (2) converting to his own use $137,437.00 of cash belonging to Fortress; and (3) executing a mortgage on real estate owned by Fortress that secures debt owed by Air-Ride. The court initially notes that a debt for injury due to conversion of corporate assets is a debt owed to the corporation, not to its shareholders. Nevertheless, to the extent that Plaintiff argues that Defendant owes him a debt for injury caused by Defendant's breach of fiduciary duty based on such wrongful conduct, such debt is nondischargeable if Defendant willfully and maliciously caused the injury. *See McDowell v. Stein*, 415 B.R. 584, 599, n.11 (Bankr. S.D. Fla. 2009) (stating that "debts incurred as a result of Appellant's fraud and breach of fiduciary duty are non-dischargeable under § 523(a)(6), independent of the non-dischargeability determinations under §§ 523(a)(2) and (4)"); *Hardesty v. Johnson*, 126 B.R. 343, 346 (Bankr. E.D. Mo. 1991) (stating that a breach of fiduciary duty claim may be nondischargeable under § 523(a)(6) as a willful and malicious injury).

There is no dispute that Fortress sold its Tennessee truck terminal and did so without Plaintiff's knowledge. Although Plaintiff argues that Defendant had no authority to cause Fortress to do so, the Option Agreement provided Defendant with authority to "vote all of the shares of Fortress as he may deem appropriate, in his sole discretion." [Doc. # 55, Ex. 1 and attached Ex. C, ¶ 3]. This broad grant of authority is subject only to two restrictions, neither of which preclude the sale of property. [*Id.*].

Nevertheless, Plaintiff claims that Defendant converted the proceeds of the sale of the Fortress Tennessee truck terminal for his own use and that of his wholly owned company, Air-Ride, and, as a result, impaired Plaintiff's equity in Fortress. While the undisputed evidence shows that some of the sale proceeds were paid to Air-Ride, Karen Stock's affidavit states that the payment was for the purpose of retiring a debt owed to Air-Ride by Fortress, a fact not disputed by Plaintiff. To the extent true, it is not clear to the court how retiring a debt owed by Fortress would impair Plaintiff's equity in the company. There is no evidence of record that Defendant misappropriated any of the sale proceeds for his own use. Rather, the Stock affidavit states that none of the proceeds went to Defendant and that, in addition to paying the debt owed to Air-Ride, the proceeds were used to pay operating expenses of Fortress and to make payments on the Comerica Mortgage. Although Plaintiff received no distribution from the sale of the Fortress Tennessee truck terminal, there is no evidence that he was entitled to any distribution of corporate property.

16

Likewise, there is no evidence that Defendant converted to his own use Fortress's cash funds in the amount of $137,437.00. The evidence shows only that Fortress reported assets at the end of its 2008 tax year that included cash in the amount of $137,437.00 and that the February 28, 2009, balance sheet reports cash in the amount of only $29,565.90. Plaintiff, however, directs the court to no evidence that any funds were, as he argues, "pocketed" by Defendant.

Finally, there is no dispute that Defendant executed the Comerica Mortgage that included a provision granting the bank a security interest in Fortress property that secured not only debt owed by Fortress but also by Air-Ride, a company solely owned by him. "It is a long-standing rule of law that one is presumed to have read what he signs." *Arch of Kentucky, Inc. v. Director, Office of Workers' Compensation Programs*, 556 F.3d 472, 480 (6th Cir. 2009). Nevertheless, Defendant avers in his affidavit that he did not know that this provision was included in the Comerica Mortgage. While Defendant's affidavit is self-serving, it may, if believed, rebut the presumption that he read the provision in the Comerica Mortgage and defeat Plaintiff's claim that any resulting injury was willful and malicious. Moreover, even if Defendant in fact was aware of the provision at the time he signed the Comerica Mortgage, that fact alone is insufficient to support a finding that Plaintiff suffered an actual injury as a result or that the injury was willful and malicious within the meaning of § 523(a)(6).

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion to Strike Affidavits of Karen Stock [Doc. # 73] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that the Affidavit of Marvin A. Robon [Doc. # 67] be, and hereby is, disregarded by the court as part of the summary judgment record; and

**IT IS FURTHER ORDERED** that second Affidavit of Stephen Sapp [Doc. # 98] be, and hereby is, disregarded by the court as part of the summary judgment record; and

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 65] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 56] be, and hereby is, **DENIED**; and

**IT IS FINALLY ORDERED** that this adversary proceeding is scheduled for further pretrial scheduling conference under Fed. R. Civ. P. 16(a), Fed. R. Bankr. P. 7016, on **February 8, 2013, at 9:30 o'clock a.m.**